# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN MARIE DINGES, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 07-52 Erie |
| ) | |
| v. ) | |
| ) | District Judge McLaughlin |
| SUPERINTENDENT WINSTEAD, et al., ) | Chief Magistrate Judge Baxter |
| ) | |
| Respondents. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner, Carolyn Marie Dinges, is a state prisoner who is incarcerated at the State Correctional Institution located in Cambridge Springs, Pennsylvania. Presently pending before this Court is her petition for writ of habeas corpus, which she filed pursuant to 28 U.S.C. § 2254. (Docket # 2).

**A.     Relevant Factual and Procedural History**

On May 23, 2001, a jury empaneled by the Court of Common Pleas of Erie County found Dinges guilty of theft by deception and of receiving stolen property, both felonies of the third degree. Jack E. Grayer, Esquire, was Dinges's court-appointed counsel. The Honorable William R. Cunningham presided over Dinges's trial and sentenced her to consecutive sentences of 3 ½ – 7 years imprisonment. The Superior Court of Pennsylvania summarized Dinges's case as follows:

> On June 5, 2000, Appellant [Dinges] and her brother, Douglas Kriner, opened a checking account [in Kriner's name] at the Erie School District Credit

1

> Union in Erie, Pennsylvania.[1] The original instrument used to open the account was a $300.00 check stolen from Appellant's friend. Once the account was open, two fraudulent deposits of $2000.00 and $50,000.00 were made using blank checks and entering the numerical figures into ATM machines.
>
> Thereafter, knowing there were no actual funds in the account, Appellant and her brother went on a spending spree. Nearly one hundred checks were written from this account to merchants for goods, services and in some instances cash. Most of the items purchased were female related. The majority of the checks Appellant would fill out the top portion and her brother would sign the check. In other instances Appellant would write out the entire check and sign her brother's name (at times without his knowledge).
>
> Further, Kriner testified that the check used to open the account was taken from Dinges's friend's purse, which was purportedly left in Dinges's car. That check was make out to Kriner and signed by Dinges. Also, Dinges, at that time, lived with Kriner and would drive him everywhere, as he lacked a driver's license. Dinges, according to Kriner, always kept the checkbook for that account in her automobile.

(State Court Record ("SCR") No. 25, Commonwealth v. Dinges, No. 1265 WDA 2001, slip op. at 2 (Pa.Super. Dec. 31, 2002) (internal record citations omitted)).

Although the Commonwealth presented Kriner as its witness, by the time of the trial he apparently had reconsidered implicating his sister in the criminal conduct and was reluctant to provide damning testimony against her. At several points during his testimony, he contended that he could not recollect events regarding the criminal conduct. During his cross-examination, Kriner acknowledged that he previously had implicated Dinges in a statement that he had given to Detective James D. Washburn of the Erie County Police on August 7, 2000, but he explained that he had been scared and under the influence of marijuana at that time and that as a result that statement was unreliable. (5/23/2000 Trial Tr. (Morning Session) at 43-44). Kriner also testified that he had "made up information implicating" Dinges in the hopes that he would get a deal from the Commonwealth in exchange for information against her. (Id. at 65). To discredit Kriner's recantation, the Commonwealth introduced the videotaped recording of the statement that he had given to Detective Washburn as a prior inconsistent statement. (See id. at 58-63; 8/7/2000 Video

---

[1] Prior to Dinges's trial, Kriner pled guilty to numerous crimes, including forgery, criminal conspiracy to commit forgery, theft by deception, conspiracy to commit theft by deception, and receiving stolen property (See 5/23/2001 Trial Tr. (Morning Session) at 25-27). He received no leniency from the Commonwealth in exchange for information about Dinges's complicity in criminal activity. (Id. at 27, 65).

2

Taped Statement Tr. at 3-58). Grayer objected to the introduction of the portion of the statement in which Kriner discussed Dinges's prior criminal record. (Id. at 60-61). Those references were redacted from the statement and were not presented to the jury. (Id.)

After the trial, Judge Cunningham appointed Deana L. Heasley, Esquire, to represent Dinges. Heasley filed Dinges's Statement of Matters Complained Of On Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), which contained the following claims: (1) the verdict was against the weight of the evidence; (2) Judge Cunningham erred in refusing to merge Dinges's convictions for sentencing purposes; and, (3) the sentence imposed was excessive. (SCR No. 18).

Judge Cunningham issued the Rule 1925(b) Opinion on December 4, 2001. (SCR No. 20, Commonwealth v. Dinges, No. 295 of 2001, slip op. (C.P. Erie Dec. 4, 2001)). On December 31, 2002, the Superior Court affirmed. (SCR No. 25, Dinges, No. 1265 WDA 2001, slip op. at 1-13). On March 4, 2004, the Pennsylvania Supreme Court denied Dinges's petition for allowance of appeal in a one-sentence order. (SCR No. 24).

On March 18, 2004, Dinges filed a *pro se* petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. (SCR No. 22). Judge Cunningham appointed William Hathaway, Esquire, to represent her, and Hathaway filed a supplemental PCRA petition. (SCR No. 26). In the PCRA proceeding, Dinges presented what she claimed was newly-discovered evidence of her innocence: proposed testimony from her aunt, Dawn Huberin, that Kriner had once again recanted the statement that he had made to the police on August 7, 2000. Dinges also claimed that Grayer had provided her with ineffective assistance at trial for: (1) advising her not to testify; (2) failing to present a handwriting expert; and (3) failing to advise her of her option to proceed to a non-jury trial.

On October 8, 2004, Judge Cunningham presided over a PCRA evidentiary hearing. Dinges, Kriner, and Grayer testified at the hearing, but Huberin did not. On November 2, 2004, Judge Cunningham issued an Opinion and Notice of Intent to Dismiss PCRA, (SCR No. 30, Commonwealth v. Dinges, No. 295 of 2001, slip op. (C.P. Erie Nov. 2, 2004), and on November 22, 2004 he issued a final order denying PCRA relief (SCR No. 31). Dinges, through Hathaway,

3

appealed. (SCR No. 34).

On June 20, 2005, the Superior Court issued a Memorandum in which it affirmed the denial of PCRA relief. (SCR No. 36, Commonwealth v. Dinges, No. 2200 WDA 2004, slip op. (Pa.Super. June 20, 2005)). Dinges contends that Hathaway did not notify her that the Superior Court had denied her appeal. Hathaway explains that he failed to properly notify Dinges of the Superior Court's decision because he had not received notification himself. In an affidavit that Dinges has attached to her federal habeas petition, Hathaway avers that he did not receive notification of the Superior Court's denial of PCRA relief until March 2006 and that he "can only surmise that the opinion was lost in transit in the mail when it was initially issued on June 20, 2005." (Hathaway Aff., Docket # 2).

On or around January 25, 2007, Dinges filed a petition for writ of habeas corpus with the United States District Court for the Eastern District of Pennsylvania. The Eastern District Court transferred the case to this Court because Dinges was convicted in Erie County, which is within the Western District of Pennsylvania.

In her petition, Dinges raises the following claims:

Claim 1   Judge Cunningham erred in permitting the introduction of Kriner's videotaped statement, because Kriner had been under the influence of drugs and alcohol when he made the statement and because the statement was coerced;

Claim 2   Grayer provided her with ineffective assistance of counsel for: (a) advising her not to testify at trial; (b) failing to obtain a handwriting expert; (c) failing "to tell [her] about the option of a nonjury trial"; and, (d) failing to advise her to enter a plea; and,

Claim 3   The prosecutor committed misconduct by failing to disclose evidence favorable to the defense.

(Docket # 2, ¶ 12).

**B. Discussion**[2]

*Claim 1*

In conducting habeas review for a state prisoner such as Dinges, this Court is limited to deciding whether her state convictions violated the Constitution of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). In Claim 1, Dinges contends that Kriner's confession was improperly admitted against her because he allegedly gave it while he was under the influence of marijuana and other drugs and because the police coerced him. Dinges's constitutional rights were not implicated by the admission of Kriner's videotaped statement, and Claim 1 raises only an issue of state law, *i.e.*, whether the statement was admissible under the Pennsylvania Rules of Evidence. Therefore, Claim 1 is not cognizable in federal habeas corpus under 28 U.S.C. § 2254(a). Estelle, 502 U.S. at 67-68 (federal courts may not "reexamine state court determination on state-law questions"); see also Johnson v. Rosemeyer; 117 F.3d 104, 109 (3d Cir. 1997); Wells v. Pestock, 941 F.2d 253, 256 (3d Cir. 1991).

Moreover, Dinges did not claim at trial, on direct review, or during the PCRA proceeding that the admission of Kriner's videotaped statement violated her federal constitutional rights (or that it violated state law, for that matter). Therefore, Claim 1 is procedurally defaulted because she failed to exhaust it in the state courts. See, e.g., Whitney v. Horn, 280 F.3d 240, 250-52 (3d Cir. 2002) (a claim is deemed procedurally defaulted when the petitioner did not exhaust it in the state court and when any subsequent effort by the petitioner to attempt to exhaust it in the state court would be futile); Lines v. Larkin, 208 F.3d 153, 160-66 (3d Cir. 2000) (same).[3]

---

[2] Respondents contend that Dinges's petition is untimely under the statute of limitations enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") at 28 U.S.C. § 2244(d)(1). However, the averments made by Hathaway in his affidavit pose the question of whether Dinges is entitled to equitable tolling of the limitations period. It is a question that this Court need not answer. Because AEDPA's statute of limitations is not jurisdictional, this Court may consider Dinges's petition and avoid what may be a complicated equitable tolling analysis. This Court shall follow that route, since Dinges's claims either are clearly procedurally defaulted or clearly without merit.

[3] A federal court may only reach the merits of a procedurally defaulted claim if the petitioner makes a

(continued...)

*Claim 2*

In Claim 2, Dinges raises four claims of ineffective assistance of counsel. The following three claims were presented to the state court during the PCRA proceeding: that Grayer provided ineffective assistance for (a) advising Dinges not to testify at trial; (b) failing to obtain a handwriting expert; and (c) failing to inform Dinges that she could proceed with a non-jury trial. Dinges did not raise her fourth ineffective assistance claim (Claim 2(d)) to the state courts. Specifically, she did not claim during the PCRA proceeding that Grayer was ineffective for failing to advise her to enter a plea.[4] Because she did not exhaust that claim before the state courts, it is procedurally defaulted and this Court may not review it on the merits. See, e.g., Whitney, 280 F.3d at 251-52; Lines, 208 F.3d at 160-65.

As for the three claims of ineffective assistance that Dinges did present during the PCRA proceeding, the Superior Court rejected them on the merits. Accordingly, this Court must review them under AEDPA's standard of review, which is set forth at 28 U.S.C. § 2254(d). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

---

[3](...continued)
showing of "cause and prejudice" or establishes a "fundamental miscarriage of justice" in order to overcome the procedural default. See, e.g., Murray v. Carrier, 477 U.S. 478, 485, 495 (1986); Whitney, 280 F.3d at 252-53; Lines, 208 F.3d at 165-67. Dinges does not argue that she satisfies either requirement with respect to Claim 1, or with respect to the other claims that she has procedurally defaulted (Claim 2(d) and Claim 3, which are discussed *infra*).

[4] Dinges testified at the PCRA hearing that Grayer "didn't inform me … whether I should plead guilty," (PCRA Hearing Tr. at 19), but she did not present that allegation as a claim of ineffective assistance during the PCRA proceeding. It is further noted that she has not directed this Court to any evidence that the Commonwealth had offered her a plea bargain or that she rejected an offer to enter a plea on the advice of Grayer.

28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

The "clearly established Federal law" in which to analyze a petitioner's ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Dinges must show that Grayer's "representation fell below an objective standard of reasonableness." Id. at 688; see also Williams, 529 U.S. at 390-91. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). "However, [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (quoting Strickland, 466 U.S. at 689). "[I]t is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997). Dinges also must show under Strickland that she was prejudiced by the Grayer's deficient performance. "This requires showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Dinges "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Superior Court applied the correct legal standard to Dinges's ineffective assistance of counsel claims. (SCR No. 36, Dinges, No. 2200 WDA 2004, slip op. at 8 (citing Commonwealth v. Kimball, 724 A.2d 326 (Pa.1999) (the legal standard for evaluating ineffective assistance

7

claims in a PCRA proceeding is the same as the federal Strickland standard)).[5]  Therefore, the Superior Court's adjudication of these claims was not "contrary to" Strickland.  Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dispositive question, then, is whether the Superior Court's adjudication of Dinges's ineffective assistance of counsel claims was an "unreasonable application" of Strickland.  It was not.  In order to overcome AEDPA's standard of review, Dinges must show that the Superior Court's decision "cannot reasonably be justified under existing Supreme Court precedent[,]" Hackett, 381 F.3d at 287, and she falls far short of meeting this burden.

In denying her first claim of ineffective assistance, the Superior Court recounted that Grayer had advised Dinges that if she testified, the Commonwealth would be able to introduce her past *crimen falsi* convictions, including her prior convictions for writing bad checks, theft by deception, criminal conspiracy to commit forgery, and theft by receiving stolen property.  Under these circumstances, the Superior Court concluded, Grayer's advice to Dinges that she not testify was sound strategy.  (SCR No. 36, Dinges, No. 2200 WDA 2004, slip op. at 9).  It further noted that "Attorney Grayer testified [at the PCRA hearing] that Dinges indicated to him that she had written parts of the checks and was present at some of the transactions.  Thus, he determined that it would be ill-advised for her to take the stand and admit key elements of the Commonwealth's case."  (Id. (citing PCRA Hearing Tr. at 36)).  In disposing of Dinges's second claim of ineffectiveness, the Superior Court observed that she admitted at the PCRA hearing that she could not articulate how Grayer's alleged failure to advise her that she could waive her right to a jury trial prejudiced her in any way, and that "Attorney Grayer also testified that he found no strategic advantage to a non-jury trial[.]"  (Id. (citing PCRA Hearing Tr. at 37)).  Finally, in rejecting Dinges's third claim – that Grayer should have presented a handwriting expert – the

---

[5]  Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.  See Werts, 228 F.3d at 202-03.

Superior Court held: "Attorney Grayer explained that he saw no strategic advantage to obtaining a handwriting expert, as Dinges admitted she filled out part of the checks and admitted her participation in the crimes, and an expert would have verified Dinges's participation." (Id. at 10 (citing PCRA Hearing Tr. at 38)).

This Court need not expand upon the Superior Court's analysis. Its adjudication of each of Dinges's ineffective assistance of counsel claims easily satisfies AEDPA's standard of review.

*Claim 3*

In Dinges's final claim, she contends that the prosecution violated her constitutional rights because it failed "to disclose to defendant evidence favorable to defendant." (Docket # 2, ¶ 12). Dinges vaguely complains that she did not have access to her "discovery information packet," (id.), but she does not set forth what evidence the prosecution purportedly withheld from the defense. In any event, this claim is procedurally barred because Dinges did not raise it to the state courts. Therefore, this Court may not review it on the merits. See, e.g., Whitney, 280 F.3d at 251-52; Lines, 208 F.3d at 160-65.

  **C. Certificate of Appealability**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." In Slack v. McDaniel, 529 U.S. 473, 474 (2000), the Supreme Court also stated that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying those standards here, jurists of reason would not find it debatable whether Dinges's three ineffective assistance of counsel claims are without merit and whether her remaining claims are procedurally defaulted. Accordingly, a certificate of appealability should

9

be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied. In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

Dated: February 3, 2009

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE